UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY J.,

                Plaintiff,

      v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 2:23-cv-01488-TLF

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the Administrative Law Judge's decision finding that plaintiff was not disabled. Dkt. 6, Complaint.

On January 26, 2017, plaintiff filed an application for DIB alleging a disability onset date of December 1, 2016. AR 145-46. He appealed the denial of his claim to this Court in January 2021. On July 14, 2021 the Honorable Judge S. Kate Vaughan granted a stipulated motion for remand. AR 787-88.

On February 3, 2020 plaintiff filed a second application for SSI and DIB alleging a disability onset date of March 1, 2019. AR 1138-39. The Appeals Council directed the

ALJ to consolidate the claims on remand. AR 792. Plaintiff's date last insured for DIB purposes was March 31, 2019. AR 710.

The claims were denied initially and upon reconsideration. AR 1018-1019, 1028-29. On February 8, 2022 a hearing was held in front of Administrative Law Judge ("ALJ") Laura Valente. AR 735-763. On March 2, 2022 ALJ Valente issued an unfavorable decision finding plaintiff not to be disabled. AR 704-29. On July 24, 2023 the Appeals Council declined the request for review. AR 693-95. Plaintiff filed this appeal.

The ALJ found that plaintiff had the following severe impairments through the date last insured: left upper extremity epicondylitis, depression, anxiety disorder vs. posttraumatic stress disorder (PTSD), and personality disorder. AR 710. Additionally, the ALJ found plaintiff had the following severe impairments since April 2019: degenerative joint disease of the bilateral shoulders. *Id*. As a result, the ALJ found that from December 16, 2016 through June 30, 2018 plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following additional restrictions:

> standing, walking, or sitting each available 6 hours in an 8-hour workday. The claimant could occasionally push, pull, and reach in all directions with the non-dominant left upper extremity. The claimant did not have limitations with the dominant right upper extremity. The claimant needed to avoid concentrated exposure to hazards (such as heights and dangerous machinery). The claimant could work in the same room as coworkers, but not in coordination with them.

AR 712. The ALJ found that from December 1, 2016 through June 30, 2018 plaintiff was capable of performing past relevant work as a clergy member (DOT 120.107.010), manager apartment house (DOT 186.167-018), and salesclerk food (DOT 290.477-018). AR 720.

1    Additionally, the ALJ found that since July 1, 2018 plaintiff has had the RFC to

2    perform medium work, with the following additional restrictions: "standing, walking or

3    sitting each available 6 hours in an 8-hour workday. The claimant can frequently reach,

4    push, and pull with the bilateral upper extremities. The claimant can work in the same

5    room as coworkers but not in coordination with them." AR 721. As a result, the ALJ

6    found plaintiff could perform past relevant work as clergy member (DOT 120.107.010),

7    manager apartment house (DOT 186.167-018), salesclerk food (DOT 290.477-018),

8    and caretaker (DOT 301.687-010). AR 727.

9                                    STANDARD

10    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

11    denial of Social Security benefits if the ALJ's findings are based on legal error or not

12    supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

13    F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

14    relevant evidence as a reasonable mind might accept as adequate to support a

15    conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

16    omitted). The Court must consider the administrative record as a whole. *Garrison v.*

17    *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

18    evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

19    The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

20    not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

21    of the Court's review. *Id.*

22

23

24

25

DISCUSSION

**1. Plaintiff's statements regarding subjective symptoms**

Plaintiff challenges the ALJ's assessment of his subjective symptom testimony. Dkt. 15 at 3-11.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

At the first hearing, plaintiff testified that he lived with his nine year old daughter and performed limited activities with his right hand including driving, carrying wood, microwaving food, and doing dishes with the help of his daughter. AR 893-95. He testified that his right arm gets to a point of overuse and he has to rest it for about an hour. AR 898-99. He testified that his mental health is impacted by his physical condition and causes difficulty with concentration, attention, and interactions with the public and coworkers. AR 903-904.

At the second hearing, plaintiff testified that he was now homeless, living in a van. AR 743. He testified that his right shoulder and hip had begun causing him pain. AR 744-45. He testified that he would have difficulty being productive and dealing with

stress in a job because of the pain. AR 748. He testified that his left upper extremity condition prohibited him from holding anything heavier than a bottle of water straight out. AR 749. He testified that he needs to keep his left arm close to him and not move it. AR 750.

A.  <u>Physical impairments</u>

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the objective medical evidence, the nature of his treatment, his activities of daily living, and other discrepancies in the record. AR 713-23.

As for the ALJ's first reason, the ALJ found plaintiff's testimony to be inconsistent with benign imaging studies and physical examination findings. AR 713-14, 722.

Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

Plaintiff argues that the ALJ erred by disregarding the context in which many of the ALJ's findings were made. Dkt. 15 at 5. Specifically, plaintiff argues that the ALJ

1   erred in relying on the benign imaging findings because x-rays are of limited use for

2   injuries such as plaintiff's that don't involve bones and the ALJ did not consider that

3   further testing was recommended that ultimately did not offer a cause for plaintiff's

4   symptoms. *Id*.

5        Here the ALJ cited not only benign imaging findings, but also evidence that

6   plaintiff retained full range of motion of his elbow, had intact stability, normal sensation,

7   normal motor strength and no signs of tenderness, and 5/5 strength throughout with a

8   March 20, 2017 exam showing 4/5 strength in the left elbow and left shoulder. AR 713-

9   14 (citing 312, 295-301, 308, 626, 663-64, 368, 373).

10        As for the evidence regarding plaintiff's physical conditions since July 1, 2018,

11   the ALJ cited records showing that plaintiff has not undergone further treatment or had

12   any significant flare-ups relating to his right elbow and objective findings related to

13   plaintiff's shoulders were relatively mild. AR 722.

14        Plaintiff challenges the evidence, arguing that the ALJ did not consider that the

15   imaging recommended further testing and some of the evidence was from examinations

16   for concerns for other ailments. Dkt. 15 at 5-6. However, plaintiff does not offer any

17   evidence that contradicts the ALJ's interpretation.

18        Additionally, the alternative interpretation presented by plaintiff is unsupported by

19   the record. Some of the findings the ALJ cited were not from appointments relating to

20   plaintiff's elbow but with the exception of a citation of an emergency room visit involving

21   perianal pain, the ALJ's citations to the medical records involved emergency room visits

22   for other physical ailments where it is reasonable that plaintiff's elbow would be

23   assessed. *See* AR 626, 368, 373. Plaintiff also argues that the ALJ failed to mention

24

25

that where imaging was benign, plaintiff's providers recommended further testing, however, this testing did not reveal a source for the pain. Dkt. 15 at 5 (citing AR 313). Therefore, this additional testing does not contradict the ALJ's interpretation. There is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

As for the ALJ's second reason, plaintiff argues the ALJ failed to consider plaintiff's financial situation when she discounted his testimony for the level of treatment plaintiff received. Dkt. 15 at 6-7. An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But an ALJ may "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons [they] may not comply with treatment or seek treatment consistent with the degree of [their] complaints." SSR 16-3p; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ found that plaintiff's left elbow complaints were not fully consistent with the nature of his treatment which consisted of "only a few physical therapy sessions, one cortisone shot on March 22, 2017, and no recommendation for surgery." AR 714. There is no indication that the ALJ considered why plaintiff did not seek further treatment for his elbow. The record reflects plaintiff's financial difficulties throughout the

period at issue. For example, in an office visit for his elbow on January 12, 2017, he was described as tearful when describing his fear of financial instability as a result of his elbow injury. AR 286.

At the first hearing he was living in a cabin on Anderson Island; when he testified at the second hearing, he stated that he was homeless and living in his van. AR 894, 742-43. At the second hearing he testified that he had not sought treatment for a few years due to challenges he faced being homeless and specifically stated that using gas to get somewhere was prohibitive. AR 246. The ALJ failed to consider plaintiff's financial constraints in pursuing treatment and therefore this was not a clear and convincing reason for discounting his testimony.

As for the ALJ's third reason, an ALJ may discount a claimant's testimony based on daily activities that contradict their testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, for the period from December 1, 2016 through June 30, 2018 the ALJ cited activities such as doing odd jobs as a handyman, looking after 25 acres of land, caring for his home, filling his wood stove, using a shovel to dig, and pruning a tree on a ladder as inconsistent with plaintiff's claims of severe dysfunction in the upper left extremity. AR 714.

For the period since July 1, 2018, the ALJ found plaintiff's testimony regarding severe limitations in upper extremities in lifting, handling, and reaching to be inconsistent with activities such as moving a big dresser, reporting to a provider that he works manual labor and cannot take time off, injuring himself using a chainsaw on a fallen tree, repairing his truck, helping people and working odd jobs, and helping his elderly neighbors with chores. AR 723.

1   Here the ALJ reasonably concluded that these activities were inconsistent with

2   plaintiff's testimony regarding the limitations stemming from his impairments. Plaintiff

3   argues that the ALJ either ignored the description of how the activities were carried out

4   or did not have enough information about the activity to support her conclusions. Dkt. 15

5   at 7-8. Plaintiff specifically challenges the ALJ's reliance on the use of the wood stove

6   and the accident where he fell off the ladder. *Id*.

7   When asked at the hearing about the wood stove plaintiff indicated that he

8   carries the wood one handed. AR 48. The ALJ did not address this limitation. The ALJ

9   cited a few notes related to the accident on the ladder. At the hearing, plaintiff testified

10   that he is required to keep the property nice due to his housing agreement and as such

11   he climbed onto a shed using a ladder and fell off when the dead limbs he kicked came

12   off easier than he expected. AR 905. The other notes are from the emergency room visit

13   for the accident. AR 371-72, 380. Plaintiff contends that this was not inconsistent with

14   his testimony because he was trying to kick the branch, which is not inconsistent with a

15   restriction on his ability to reach. Dkt. 15 at 7. However, plaintiff does not address the

16   action of climbing the ladder, which is inconsistent with his limitations in using his arm.

17   Furthermore, the ALJ reasonably relied on the activities that plaintiff does not challenge

18   such as maintaining the 25 acre property, using a shovel to dig and the activities that

19   she cited in discounting his testimony for the period since Jully 1, 2018. *See Smartt v.*

20   *Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("It is not the court's role to 'second guess' an

21   ALJ's reasonable interpretation of a claimant's testimony.")

22   As for the ALJ's fourth reason, the ALJ also discounted plaintiff's testimony on

23   the basis that plaintiff made various inconsistent statements to providers throughout the

24

25

9

record. AR 715-16, 724-25. An ALJ may consider prior inconsistent statements

concerning symptoms and "other testimony by [plaintiff] that appears less than candid"

in weighing a plaintiff's credibility, *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

2008). Plaintiff argues that these statements were minor and unrelated to plaintiff's

allegations, and states that in the case of the reports about spending time with his

daughter the ALJ failed to consider plaintiff's changing circumstances. Dkt. 15 at 8.

The ALJ failed to consider plaintiff's changing circumstances regarding reports

about plaintiff's daughter and social activities, because plaintiff was dealing with

unstable housing. The discrepancies could have been attributed to changes in his living

situation. However, the other discrepancies noted by the ALJ including statements

regarding his alcohol consumption, history of using illicit drugs, performance in school,

and psychotic symptoms he experienced, are relevant to plaintiff's credibility as a

historian. *See Tomasetti*, 533 F.3d at 1039.

Therefore, the inconsistency with the medical record, plaintiff's activities, and the

other inconsistencies in the record were clear and convincing reasons to discredit

plaintiff's subjective symptom testimony; any error in relying on plaintiff's lack of

treatment and the discrepancies in reports involving his daughter was harmless.

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

B. Mental impairments

Plaintiff argues the ALJ erred in determining that plaintiff's allegations about his

mental impairments were inconsistent with his presentation at unrelated appointments.

Dkt. 15 at 6. The ALJ discounted plaintiff's mental impairments on the basis that

plaintiff's conditions predated his alleged onset date and did not prevent him from

working before that point, plaintiff's employment ended for reasons unrelated to his

mental conditions, plaintiff testified that if not for his physical condition he would go back

to work "in a heartbeat," plaintiff's allegations were inconsistent with benign presentation

during appointments, and plaintiff has not sought mental health treatment since July

2018 including not seeking treatment after receiving DSHS benefits including coverage

for care since 2020. AR 714-15, 723.

      The ALJ cited notes throughout the record showing normal mental status

examinations and concluded these did not corroborate plaintiff's claims of severe

mental dysfunction. AR 714-15. Plaintiff argues that none of these notes involved

consideration of plaintiff's mental health conditions, however, plaintiff does not point to

any portion of the record that showed worsening symptoms or otherwise undermined

the ALJ's conclusion.

    Plaintiff does not challenge any of the ALJ's other reason for discounting his mental-

health related testimony and cites no records to undermine the ALJ's findings. The

Court, therefore, declines to disturb the ALJ's assessment of plaintiff's testimony. *See*

*Carmickle.*, 533 F.3d at 1161 n. 2 (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*,

328 F.3d 1145, 1164 (9th Cir. 2003)) (noting that a court will not consider matters that

are not "'specifically and distinctly'" argued in the plaintiff's opening brief).

### 2. Medical evidence.

      Plaintiff challenges the ALJ's assessment of the opinions regarding his left arm

and opinions regarding his mental abilities. Dkt. 15 at 12-14.

      Plaintiff filed their applications prior to March 27, 2017, therefore under the

applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the

uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester* 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

A.  Opinions regarding use of left arm

On March 20 2017 Dr. Gary Gaffield, M.D. performed an examination of plaintiff and conducted a review of records. AR 296-301. He diagnosed plaintiff with weakness

and moderate discomfort in his left elbow with a probable underlying epicondylitis awaiting an MRI. AR 300. He opined that plaintiff could lift no more than 20 pounds occasionally and 10 pounds frequently, had no manipulative restrictions as long as he is not reaching or working overhead with the left arm, and should avoid climbing scaffolding, ladders, obstacles in his pathway. AR 300-01.

On May 19 2017 Dawn Mautner, M.D. completed a medical source statement. AR 317-18. She listed plaintiff's diagnoses as left medial and lateral epicondylitis and right lateral epicondylitis. AR 317. She stated that lifting, reaching, and handling exacerbate plaintiff's symptoms. *Id*. She opined that plaintiff could not perform even sedentary work. AR 318. She opined that plaintiff can never handle or reach with either upper extremity but could lift at least two pounds with the caveat that he cannot handle or manipulate or tilt on a repetitive or sustained basis. *Id*.

On June 26, 2017 Dr. Greg Saue, M.D. reviewed plaintiff's file as a part of the reconsideration for plaintiff's DIB claim. AR 94-95. Dr. Saue opined that plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently. AR 94. He opined plaintiff was limited in reaching in front and/or laterally and overhead. *Id*. He opined plaintiff is not able to reach and should avoid concentrated exposure to hazards. AR 95.

The ALJ gave partial weight to Dr. Gaffield's and Dr. Saue's opinions on the basis that their opinions that plaintiff could perform light exertional work was consistent with the overall evidence, however, the ALJ found that the manipulative limitations were out of proportion with unremarkable workup findings, Dr. Gaffield's own examination findings, later improvements in symptoms, plaintiff's daily activities, the nature of plaintiff's treatment, and the ALJ rejected them to the extent they relied on plaintiff's

self-reported limitations. AR 716-717. The ALJ gave little weight to Dr. Mautner's opinion on the basis that it relied on plaintiff's right tennis elbow, which was non-severe, it relied on the diagnosis of left tennis elbow which Dr. Mautner saw plaintiff for only twice early on and therefore did not account for later findings that showed improvement, it was inconsistent with plaintiff's activities, it was inconsistent with the nature of plaintiff's treatment, the opinion that he could not perform sedentary work was inconsistent with the fact that he has no impairments with standing/walking, and the ALJ rejected it to the extent it relied on plaintiff's self-reported limitations. AR 717-18.

The ALJ cited largely the same daily activities in discrediting the opinions of the doctors as she did in discrediting plaintiff's testimony – doing odd jobs as a handyman, caring for 25 acres of land, carrying wood to his stove, digging with a shovel, and climbing a ladder to trim a tree. AR 717. She also cited the fact that plaintiff reported using a chainsaw to cut a tree in July 2020. *Id*. Inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The Court has already determined that the ALJ reasonably concluded that most of these activities were inconsistent with the limitations plaintiff testified to. The same is the case here. For example, Dr. Gaffield opined that plaintiff should avoid climbing ladders which is clearly inconsistent with reports that plaintiff injured himself after falling off of a shed he had used a ladder to climb onto. *See* AR 300-01. It was reasonable for the ALJ to conclude that the other activities listed were also inconsistent with the manipulative limitations opined by Dr. Gaffield and Dr. Saue and with Dr. Mautner's opinion that plaintiff was severely limited

14

1    and could not lift ten pounds or handle, manipulate or lift on a repetitive or sustained

2    basis.

3          Accordingly, the ALJ provided a specific and legitimate reason for rejecting these

4    opinions and the Court will not consider the additional reasons for discounting their

5    opinions because any error would be harmless. *Carmickle v. Comm'r, Soc. Sec.*

6    *Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

7          B.  Opinions regarding mental impairments

8          On March 15, 2017 Dr. Stephanie Hanson, Ph.D. performed a psychological

9    evaluation of plaintiff. AR 291-94. Dr. Hanson reported that plaintiff showed hostility

10   beginning with the reception room and throughout the evaluation plaintiff became more

11   somber but laughed at some tasks with contempt. AR 293. She opined that plaintiff

12   would be able to maintain work considering his psychological factors; he could

13   remember and understand simple to complex instructions, make simple or complex

14   decisions independently, and would be able to concentrate on goal-directed behavior.

15   AR 294. She opined that independent of the mental health diagnoses, contempt for the

16   person providing information may interfere with his ability to learn and this may also

17   impact his relationship with supervisors, coworkers, and the public. *Id*.

18         On September 25, 2020 Dr. Katia Ramirez, Psy.D. performed a psychological

19   evaluation of plaintiff on referral from the Washington State Division of Disability

20   Determination Services. AR 1373-78. Dr. Ramirez opined that plaintiff was capable of

21   performing simple and repetitive tasks and may be able to perform more detailed tasks.

22   AR 1378. She opined plaintiff may have difficulty attending work regularly and making it

23   through a workday without disruption from psychological symptoms. *Id*. She opined

24

25

plaintiff would not have difficulty accepting instruction from supervisors or getting along with coworkers and the public. *Id*. She opined plaintiff may perform on a consistent basis with limited supervision and would have difficulty dealing with the stress of a competitive or intense work environment. *Id*.

On November 23, 2020 Dr. Alysa A. Ruddell, Ph.D. performed a psychological evaluation of plaintiff. AR 1394-968. Dr. Ruddell assigned an overall severity rating of 4/5 or marked, and rated plaintiff's anxiety and depression as a 4/5. AR 1395. Dr. Ruddell assessed plaintiff's ability to perform basic work activities and opined plaintiff would have a marked limitation in the following activities: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, learn new tasks, adapt to changes in a routine work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR 1396. She opined that plaintiff would have none or mild or moderate limitations in every other listed basic work activity and assigned an overall severity rating of marked. *Id*.

The ALJ gave partial weight to Dr. Hanson's opinion on the basis that plaintiff's hostile presentation during the evaluation was inconsistent with relatively unremarkable presentations in routine appointments with treating providers, and his demonstrated ability to interact with his family and people in the community. AR 719. The ALJ gave little weight to Dr. Ramirez's opinion on the basis that it was inconsistent with her objective findings and appeared to rely on plaintiff's self-reported symptoms/limitations. AR 725-26. The ALJ gave little weight to Dr. Ruddell's opinion on the basis that it was inconsistent with plaintiff's presentation during the interview, plaintiff's minimal mental

1   health treatment, plaintiff's activities, the fact that plaintiff's self-reported symptoms/

2   limitations were not fully reliable, and plaintiff's prior testimony that if not for his physical

3   condition he would go back to work. AR 726-27.

4         As for the ALJ's first reason for discounting Dr. Hanson's opinion, plaintiff argues

5   that the ALJ erred in concluding that plaintiff's presentation was in stark contrast with his

6   presentation in other appointments, because plaintiff was equally as dismissive when he

7   was evaluated by Dr. Ruddell in November 2020. Dkt. 15 at 13. Dr. Ruddell noted that

8   the interview with plaintiff was difficult because:

9         [h]is phone reception was not consistent. He resisted providing information. Often
    his responses were vague or did not answer the question. He complained he was
10  cold. Response latency was an issue. Questions and directions were repeated.
    He asked to stop the interview, 'how much longer will this go on?' The examiner
11  said if he responded more quickly, it would go faster. This statement upset him.

12  AR 1395. The ALJ considered this presentation in his evaluation of Dr. Ruddell's

13  opinion and concluded that it raised questions regarding plaintiff's effort and therefore

14  the reliability of the results of the examination. AR 726. Furthermore, the ALJ cited

15  emergency room encounters and primary care visits throughout the record where

16  plaintiff presented with a normal mood, behavior, and affect, and where plaintiff

17  presented relatively unremarkably. AR 719 (citing AR 373, 381, 626, 638, 648, 663,

18  674-75, 1332, 1337, 1368, 1381, 1384, 1389). The Court concludes that the evidence

19  the ALJ cited of normal presentation in examinations was substantial evidence that

20  supports the ALJ's conclusion.

21        The evidence that plaintiff typically presented with normal mood, behavior, and

22  affect supports the ALJ's conclusion that plaintiff can act appropriately with the public

23  and with supervisors despite Dr. Hanson's opinion based upon plaintiff's hostile

24

25                               17

1   presentation in her evaluation of him. The ALJ is responsible for determining credibility

2   and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157

3   F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of

4   credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v.*

5   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion

6   must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.

7   1999). Determining whether inconsistencies in the evidence "are material (or are in fact

8   inconsistencies at all) and whether certain factors are relevant to discount" medical

9   opinions "falls within this responsibility." *Id.* at 603.

10          Furthermore, plaintiff does not contest the other evidence the ALJ cited in

11   discounting Dr. Hanson's opinion, including his ability to care for his daughter, attend

12   church and community center activities, shop for groceries, work as a senior deckhand,

13   get along with friends, family, neighbors, and bosses, and perform odd jobs for people.

14   *See* AR 719 (AR 197, 199-200, 202, 292, 1394). This evidence also supports the ALJ's

15   conclusion. Therefore, the ALJ did not err in discounting Dr. Hanson's opinion.

16          As for the ALJ's first reason for discounting Dr. Ramirez's opinion, an internal

17   inconsistency can serve as a proper reason for discounting a physician's opinion. *See*

18   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also*

19   *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of an

20   internally inconsistent medical opinion). Here, the ALJ concluded that plaintiff's

21   appearance and performance testing during the evaluation did not support Dr.

22   Ramirez's conclusion that plaintiff's mental conditions were disabling. AR 725.

23   Specifically, the ALJ noted that plaintiff appeared appropriately dressed and well

24

25
                                            18

groomed, had a depressed mood but appropriate eye contact, was pleasant and cooperative, displayed normal speech, linear, logical, and goal-directed thought process, normal thought content, with no psychosis or suicidal ideation; and testing showed that plaintiff was capable of performing simple as well as more detailed tasks. AR 725. The ALJ concluded that this was inconsistent with Dr. Ramirez's opinion that plaintiff would have difficulty attending work regularly, making it through the day without interruption from psychological symptoms, and dealing with the stress of a competitive or intense work environment. *Id.* Plaintiff does not contest this conclusion. This was a specific and legitimate reason for discounting Dr. Ramirez's opinion. *See Morgan*, 169 F.3d at 601.

The ALJ also noted that the reliance on self-reported symptoms/limitations was problematic given the discrepancies noted elsewhere in the opinion that detracted from plaintiff's reliability as a historian. AR 726. The ALJ also made such a finding in evaluating Dr. Ruddell's opinion. AR 727. Here, as stated above, the ALJ already properly discounted plaintiff's statements about his symptoms. Therefore, it was not error for the ALJ to discount these opinions for the reliance on those discounted statements.

Plaintiff also challenges the ALJ's reliance on plaintiff's statement that if not for his physical condition, he would go back to work in a heartbeat, arguing that it was improper for the ALJ to discount Dr. Ruddell and Dr. Ramirez on the basis that plaintiff desired to return to work. Dkt. 15 at 14. However, the ALJ did not discredit these opinions because of plaintiff's desire to return to work, but rather because plaintiff's

statement is inconsistent with the limitations opined by Drs. Ruddell and Ramirez concerning plaintiff's inability to work due to his mental health limitations.

Accordingly, the ALJ provided a specific and legitimate reason for rejecting these opinions and the Court will not consider the additional reasons for discounting their opinions because any error would be harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is affirmed.

Dated this 12th day of August, 2024.

Theresa L. Fricke
United States Magistrate Judge